# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8526 | **DATE** | 4/18/2002 |
| **CASE TITLE** | RUDI RODRIGUEZ, et al. vs. FORD MOTOR CREDIT CO. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiffs' motions for class certification [35-1] and to dismiss defendant's counterclaims [45-1] are denied. Plaintiffs' motion to dismiss defendant's conditional counterclaims [45-2] is moot. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | APR 19 2002 | |
| ✓ | Notices mailed by judge's staff. | | date docketed | |
| | Notified counsel by telephone. | | docketing deputy initials | |
| | Docketing to mail notices. | | 4/18/2002 | |
| | Mail AO 450 form. | | date mailed notice | |
| | Copy to judge/magistrate judge. | | bb | |
| cb | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RUDI RODRIGUEZ, et al. )
) No. 01 C 8526
Plaintiffs, )
) Suzanne B. Conlon, Judge
v. )
)
FORD MOTOR CREDIT CO. )
)
Defendant. )

**DOCKETED**
**APR 1 9 2002**

## MEMORANDUM OPINION AND ORDER

Plaintiffs Rudi Rodriguez, Armando Alvarez, Norma Alvarez, Claudia Pineda, Ismael Vasquez, Francisco Ramirez, Josefina Ramirez, Maria de los Angeles Romero and Hector Romero brought this purported national class action against Ford Motor Credit Company ("Ford Credit") for discrimination in violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, 42 U.S.C. § 1981 ("§ 1981") and 42 U.S.C. § 1982 ("§ 1982"). Ford Credit counterclaimed against named plaintiffs Armando Alvarez, Norma Alvarez, Ismael Vasquez, Maria de los Angeles Romero and Hector Romero as well as any putative class members for breach of contract. Plaintiffs thereafter voluntarily dismissed the claims of Rudi Rodriguez, Armando Alvarez and Norma Alvarez without prejudice. Ford Credit then withdrew the counterclaims against Armando Alvarez and Norma Alvarez. The remaining named plaintiffs (collectively, "plaintiffs") move for class certification pursuant to Federal Rule of Civil Procedure 23. Plaintiffs also move to dismiss the counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(2) and (b)(6).

1



## BACKGROUND

Plaintiffs, who are Hispanic, received financing from Ford Credit to purchase automobiles. Amended Complaint ¶ 8. According to plaintiffs, Ford Credit subjected them and other Hispanics to a discriminatory finance charge policy based on race. *Id.* at ¶¶ 2, 51, 63, 66. Under Ford Credit's finance charge policy, the annual percentage rate ("APR") charged for financing consists of: (1) the minimum interest rate at which Ford Credit will finance the transaction ("buy rate"); and (2) the finance charge over the buy rate ("finance charge markup"). *Id.* at ¶¶ 22-27. Plaintiffs claim that Ford Credit's finance charge policy allows the individual dealerships to impose a higher finance charge markup on Hispanic customers than other similarly situated non-Hispanic customers. *Id.* at ¶¶ 2, 4, 28, 51, 63, 66. Ford Credit counterclaims that certain named plaintiffs and putative class members have defaulted on their financing contracts. Counterclaim ¶¶ 3-4; Conditional Counterclaim ¶¶ 1-3.

## DISCUSSION

### I. Motion for Class Certification

In their motion for class certification, plaintiffs propose the following class:

> All Hispanic individuals who obtained financing from Ford Motor Credit Company in connection with an automotive purchase pursuant to a retail installment contract in the United States from January 1, 1990 to the present.

In deciding a motion for class certification, the court may not consider the merits of the underlying claim. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). However, the court may look beyond the pleadings to determine whether the requirements of Rule 23 have been met. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir. 2001). The court must "understand the claims, defenses, relevant facts and applicable substantive law in order to make a meaningful

determination of certification issues." *Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 530 (N.D. Ill. 1998).

Plaintiffs bear the burden of establishing the requirements for class certification. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Under Rule 23(a), plaintiffs must prove: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23(a). If all four elements of Rule 23(a) are satisfied, plaintiffs must then satisfy one of the subsections of Rule 23(b). Fed. R. Civ. P. 23(b).

## A. Rule 23(a) Requirements

Ford Credit does not dispute that plaintiffs meet the requirements of Rule 23(a). Rather, Ford Credit's challenge to class certification centers on the requirements of Rule 23(b). Nevertheless, the court is not limited to arguments made by the party opposing class certification. The court must undertake an independent analysis to determine whether all requirements of Rule 23 are satisfied. *See In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1124 (7th Cir. 1979).

### 1. Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. To establish numerosity, plaintiffs are not required to provide an exact number of class members. *Marcial v. Coronet Insurance Co.*, 880 F.2d 954, 957 (7th Cir. 1989). However, plaintiffs must provide a good faith estimate of the class size. *Allen v. City of Chicago*, 828 F.

3

Supp. 543, 550 (N.D. Ill. 1993). The court is entitled to make common sense assumptions in considering plaintiffs' good faith estimate. *Buycks-Roberson v. Citibank Federal Savings Bank*, 162 F.R.D. 322, 329 (N.D. Ill. 1995).

Plaintiffs estimate that the nationwide class exceeds 10,000 members. According to Ford Credit, it purchased approximately 2,068,000 retail installment contracts from approximately 7,500 dealers in the United States during 2001. Ford Credit Response Ex. 2. As of January 2002, Ford Credit was receiving payments on approximately 6,000,000 retail installment contracts entered into in the United States. *Id.* At the request of Ford Credit's counsel, economist Janet R. Thornton reviewed the transaction data of the retail installment contracts purchased by Ford Credit from five Chicago area dealerships, Arlington Heights Ford, Bert Weinman Ford, Spring Hill Ford, Zimmerman Ford and Webb Chevrolet, from January 1, 2000 to December 31, 2001. Ford Credit Response Ex. 1. Of the 10,641 contracts purchased from these dealerships, 2,930 contracts contained a finance charge markup.

Ford Credit does not request or receive any information on the race or national origin of its customers. Ford Credit Response Ex. 2. To obtain this information, plaintiffs intend to utilize an expert to conduct a random sample of Ford Credit's customers to identify race and ethnicity in an effort to predict the demographic composition of Ford Credit's customer database. Pl. Motion Ex. G-F. In the meantime, plaintiffs opine that Hispanics comprise approximately 12% of the United States population. Pl. Motion p. 7. Although plaintiffs fail to provide any demographic support for their estimate, the court may take judicial notice of census information. *See Barnett v. Daley*, 32 F.3d 1196, 1198 (7th Cir. 1994). *See also* Fed. R. Evid. 201(b)(judicial notice may be taken of any

4

fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

In the 2000 United States Census, Hispanics comprised 12.5% of the United States population and 12.3% of the Illinois population. *See* www.census.gov. Moreover, Hispanics comprised 19.9% of the population of Cook County, Illinois where Arlington Heights Ford, Bert Weinman Ford and Webb Chevrolet are located, and 23.7% of the population of Kane County, Illinois where Spring Hill Ford and Zimmerman Ford are located. *Id.* Based on these numbers, the court may reasonably infer that plaintiffs meet the numerosity requirement of Rule 23(a).

**2.     Commonality**

Rule 23(a)(2) requires plaintiffs to demonstrate that there are questions of law or fact common to the class. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). A common nucleus of operative fact is found where "the defendants have engaged in standardized conduct towards members of the proposed class." *Id.*

Plaintiffs allege that Ford Credit allowed dealerships to exercise their discretion under Ford Credit's finance charge policy in imposing a higher finance charge markup on Hispanic customers than other similarly situated non-Hispanic customers. Commonality may be found where the defendant operates under a general policy of discrimination manifested through entirely subjective decision making practices. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 159 n. 15 (1982). Based on this standard, plaintiffs have satisfied the commonality requirement of Rule 23(a).

5

### 3. Typicality

Typicality is closely related to the question of commonality. *Keele*, 149 F.3d at 595. A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), *quoting De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Plaintiffs' claims fall within this definition. Each plaintiff was subject to a finance charge markup pursuant to Ford Credit's finance charge policy. Plaintiffs sue Ford Credit under the ECOA, § 1981 and § 1982, alleging violations of the same statutory sections under the same legal theories. The typicality requirement of Rule 23(a) is satisfied.

### 4. Adequacy of Representation

The final subsection of Rule 23(a) requires that the representative parties fairly and adequately represent the class. This determination has two elements: (1) the adequacy of the named plaintiffs' counsel; and (2) the adequacy of representation provided by the named plaintiffs in protecting the different, separate and distinct interests of class members. *Retired Chicago Police*, 7 F.3d at 598. "A class is not fairly and adequately represented if class members have antagonistic or conflicting interests." *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986).

Plaintiffs satisfy both requirements. First, plaintiffs' counsel has provided firm and individual biographies summarizing their qualifications and experience. Lead counsel Kenneth Wexler has been involved in numerous class actions, including *In re Synthroid Marketing Litigation*, MDL No. 1182 (N.D. Ill. 1995) and *In re Lithotripsy Antitrust Litigation*, 188 F.R.D. 310 (N.D. Ill. 1999). Second, the class representatives do not appear to have interests antagonistic

to the class and have a sufficient interest in the outcome to litigate the case vigorously. The class representatives, like the putative class members, have claims for economic damages allegedly caused by Ford Credit's finance charge policy. Therefore, the adequacy of representation requirement of Rule 23(a) is satisfied.

## B. Rule 23(b) Requirements

The court must then turn to the requirements of Rule 23(b). Plaintiffs request divided certification under Rule 23(b)(2) and (3). Specifically, plaintiffs ask the court to certify a Rule 23(b)(2) class for equitable relief and a Rule 23(b)(3) class for damages. *See Lemon v. International Union of Operating Engineers, Local 139*, 216 F.3d 577, 581 (7th Cir. 2000). The Seventh Circuit has "made clear that mixed class actions that seek both equitable and compensatory relief must satisfy the formalities of Rule 23(b)(3)." *Ameritech Benefit Plan Committee v. Communication Workers of America*, 220 F.3d 814, 820 (7th Cir. 2000), *citing Jefferson v. Ingersoll Intern., Inc.*, 195 F.3d 894 (7th Cir. 1999).

Rule 23(b)(3) requires a showing that "questions of law or fact common to the members of the class predominate and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In considering Rule 23(b)(3)'s requirements, the court must review the substantive elements of plaintiffs' cause of action, the proof necessary for the various elements and the manageability of the trial on these issues. *Simer v. Rios*, 661 F.2d 665, 672 (7th Cir. 1981).

## 1. Plaintiffs' Cause of Action

Plaintiffs intend to prove Ford Credit discriminated against Hispanics through the use of statistical evidence. "The line between disparate impact and disparate treatment cases is most

7

blurred in 'pattern and practice' cases such as this one, because statistics can be used to prove both disparate treatment and disparate impact." *EEOC v. Chicago Miniature Lamp Works*, 947 F.2d 292, 297 (7th Cir. 1991). Although plaintiffs focus on a disparate impact theory for all their claims, plaintiffs may not proceed with a disparate impact case under § 1981 or § 1982. *See General Building Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982). Moreover, Ford Credit disputes whether plaintiffs may proceed under a disparate impact theory under the ECOA. Without deciding this open issue, the court evaluates plaintiffs' motion for class certification under both theories.

Plaintiffs may prove a *prima facie* case of both disparate treatment and disparate impact discrimination through statistical evidence alone. *EEOC v. O & G Spring & Wire Forms Specialty Co.*, 38 F.3d 872, 876 (7th Cir. 1994). If plaintiffs establish a *prima facie* case of discrimination through statistical evidence, the burden then shifts to Ford Credit. In a pattern or practice disparate treatment case, Ford Credit must provide a "nondiscriminatory explanation for the apparently discriminatory result." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 360 n. 46 (1977). In a disparate impact case, Ford Credit must prove the finance charge policy has a "manifest relationship" to the creditworthiness of the applicant. *A. B. & S. Auto Service, Inc. v. South Shore Bank of Chicago*, 962 F. Supp. 1056, 1061 (N.D. Ill. 1997). *See also Griggs v. Duke Power Co.*, 401 U.S. 424, 431-33 (1971).

2.  **Evidence**

Plaintiffs' proposed experts claim they can perform a valid statistical analysis measuring the discriminatory effect of Ford Credit's finance charge policy on Hispanics. Pl. Motion Ex. E-F. In response, Ford Credit has identified several individualized factors that may explain the disparity in

finance charges, including buyer preferences, negotiation skills and creditworthiness, all of which must be evaluated in light of the 7,500 individual dealerships' policies and practices. Relying on their proposed experts' reports, plaintiffs counter that these factors do not have any bearing on whether Ford Credit's finance charge policy has a disparate impact on, or results in the disparate treatment of, Hispanics.

### 3. Manageability of Trial

Although plaintiffs correctly point out that the individualized factors identified by Ford Credit are not relevant to plaintiffs' *prima facie* case of discrimination, these factors are relevant to Ford Credit's defense. Under either theory of discrimination, Ford Credit may utilize variable individualized factors to establish that the finance charge markup is based on a legitimate consideration, such as creditworthiness, rather than race. Plaintiffs fail to show that these factors did not play any role in the interest rate charged to Hispanic customers. Therefore, a trial would require an individualized inquiry into the reasons for thousands of credit decisions. As this court has previously held, "where liability determinations are both individual and fact-intensive, class certification under Rule 23(b)(3) is improper." *Roman v. First Franklin Financial Corp.*, No. 00 C 7228, 2001 WL 322563, at *2 (N.D. Ill. March 3, 2001).

### II. Motion to Dismiss Counterclaims and Conditional Counterclaims

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the counterclaim as true and draws all reasonable inferences in favor of the nonmovant. *See Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). Ford Credit counterclaims that Maria de los Angeles Romero and Hector Romero defaulted on their contractual obligations for the purchase of a 1999 Ford Explorer. Counterclaim ¶ 3. Ford Credit similarly counterclaims that

Ismael Vasquez defaulted on his contractual obligations for the purchase of a 1995 Ford Bronco. *Id.* at ¶ 4. Ford Credit alleges that these individual plaintiffs are "indebted to Ford Credit in an amount to be determined by motion or at trial. *Id.* at ¶¶ 3-4. In ruling on a motion to dismiss, the court considers "whether relief is possible under any set of fact that could be established consistent with the allegations." *Pokuta v. Trans World Airlines, Inc.*, 191 F.3d 834, 839 (7th Cir. 1999), citing *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

Plaintiffs first argue that Ford Credit's counterclaims against the individual plaintiffs fail to state a claim upon which relief can be granted. Ford Credit alleges the existence of financing contracts, the individual plaintiffs' breaches, and that damages resulted from the breaches. These allegations are sufficient to state the elements of breach of contract claims. *See Bennett v. Schmidt*, 153 F.3d 516, 517 (7th Cir. 1998)("Complaints need not plead law or match facts to every element of a legal theory").

Plaintiffs next argue the court lacks jurisdiction over the counterclaims because they are permissive rather than compulsory. The court may "maintain supplemental jurisdiction over counterclaims, whether compulsory or permissive, so long as the counterclaims 'are so related' to the original claims that they form the same case or controversy." *Rothman v. Emory University*, 123 F.3d 446, 454 (7th Cir. 1997), *citing* 28 U.S.C. § 1367(a). Ford Credit alleges the individual plaintiffs breached the standard form finance contract at issue in plaintiffs' suit. Although a counterclaim for recovery of a defaulted debt related to the underlying contract "falls within the outer boundary of § 1367(a)," the counterclaim nevertheless falls within the court's jurisdiction. *Channell v. Citicorp National Services, Inc.*, 89 F.3d 379, 386 (7th Cir. 1996). The court must then determine whether to decline to exercise supplemental jurisdiction.

Under § 1367(c), the court may decline to exercise supplemental jurisdiction if the counterclaims: (1) raise a novel or complex issue of state law; (2) predominate over the original claim; (3) remain after dismissal of the original claim; or (4) require dismissal for compelling reasons in exceptional circumstances. Ford Credit's counterclaims are basic breach of contract claims that neither raise any novel, complex issues of state law nor predominate over plaintiffs' claims. Therefore, the court will exercise supplemental jurisdiction over Ford Credit's counterclaims.

Finally, plaintiffs move to dismiss Ford Credit's conditional counterclaims against the putative class members pursuant to Rule 12(b)(1), (b)(2) and (b)(6). Ford Credit's conditional counterclaims are premised entirely on class certification. Based on the denial of class certification, plaintiffs' motion to dismiss Ford Credit's conditional counterclaims is moot.

## CONCLUSION

Plaintiffs' motions for class certification and to dismiss defendant's counterclaims are denied. Plaintiffs' motion to dismiss defendant's conditional counterclaims is moot.

April 18, 2002

ENTER:

Suzanne B. Conlon
United States District Judge

11